# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANDREW KING,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security**<br><br>    Defendant. | Case No. 4:17-CV-2512-ERW |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Andrew King ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 15) and Defendant has filed a brief in support of the Answer (ECF 22).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI under Titles II and XVI of the Social Security Act in May 2014 (Tr. 267-275). Plaintiff was initially denied relief on July 11, 2014, and on August 7, 2014, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 186-190, 193-200). After a hearing, by a decision dated August 2, 2016, the ALJ found Plaintiff was not disabled (Tr. 22-33). Plaintiff filed a *Request for Review of Hearing Decision* on September 6, 2016 (Tr. 265). On August 14, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff appealed to the United States District Court for

the Eastern District of Missouri on October 3, 2017 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and Plaintiff has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date of his disability (Tr. 38).

The ALJ found Plaintiff has the severe impairments of morbid obesity[1], subacromial and subdeltoid bursitis[2], degenerative disc disease with radiculopathy in the lumbar spine[3], and status/post medial meniscus tear[4] (Tr. 38). The ALJ also found Plaintiff's non-severe impairments[5] include gastroesophageal reflux disease,[6] ("GERD") and a history of Osgood-Schlatter's disease[7] (Tr. 39). Plaintiff claimed an alleged disability as a result of a memory problem following a car accident, however, the ALJ found memory loss to be a non-medically determinable impairment because there is no associated diagnosis or clinical observation in the record supporting a claim of memory loss (Tr. 39). The ALJ found no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 39).

---

[1] Morbid obesity is the term used to describe an individual who has a Body Mass Index ("BMI") of 40 or more, or is more than 100 pounds over his or her ideal body weight.
[2] Subacromial and subdeltoid bursitis is a condition where small sacs of fluid between the bones, muscles, and tendons in a person's shoulder become swollen and cause intense pain which can get worse after movement.
[3] Degenerative disc disease with radiculopathy in the lumbar spine is a condition where the spinal vertebrae in the lowest part of the spine is unaligned, which can result in irritation or compression the spinal nerve roots which can cause pain, numbness, and weakness in a person's back and legs.
[4] A medial meniscus tear is a knee injury which occurs when a piece of cartilage in the knee tears.
[5] A non-severe impairment is one where medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to perform basic work activities.
[6] GERD is a digestive disorder which affects the lower esophageal sphincter which can cause heartburn and acid indigestion.
[7] Osgood-Schlatter's disease is a common cause of knee pain in growing adolescents. The pain results from inflammation of the area just below the knee where the tendon from the kneecap attaches to the shinbone.

The ALJ conducted a hearing with Plaintiff, his counsel, and a vocational expert on March 3, 2016 (Tr. 138-167). At the beginning of the hearing, Plaintiff's attorney indicated the record was not complete and there were additional records from Mercy Hospital, including documentation of a meniscal repair, which needed to be considered (Tr. 141). The ALJ agreed to hold the record open for twenty one days to allow for the submission of additional records (Tr. 142).

At the hearing, Plaintiff testified he had one year of college education, and no additional formal training or schooling since 1998 (Tr. 144). His past work includes a position at Kapiloani Gardens Apartments as a residential manager which ended in 2009, a position in construction and remodeling with Value Remodeling in, a position with Hunt Building Company remodeling old buildings, driving a supply truck for Pro Service Hawaii Business, repairing and installing ice machines for Pacific Ice Services, plumbing for Complete Mechanical and A-Pack Mechanical, one day working with St. Louis Paving, and installing air conditioners for Kenneth Crowder (Tr. 144-148). In 2009, Plaintiff was fired from Kapiolani Gardens because he could not keep up with the work schedule, or the demands of the job, because his back was giving him a lot of problems (Tr. 148). Plaintiff testified while he had "put in some applications" for employment, he had not held a job since 2009 (Tr. 149).

Plaintiff lives with his parents in their home, has a driver's license, and drives approximately two times a week (Tr. 149-150). Plaintiff has doctor's appointments "at least once every three weeks" (Tr. 150). Plaintiff has been through physical therapy at least three times for his shoulder and knees, and has received shots in both of his knees, his shoulder, and his back (Tr. 151-153). At the time of the hearing, Plaintiff weighed 440 pounds, down from 480 pounds approximately a year and half before (Tr. 153). Plaintiff's old hobbies were primarily activity

3

related including sports, hunting, and fishing, but now Plaintiff spends his days around the house playing an occasional game, watching sports, and helping with chores (Tr. 154-155). Plaintiff's right knee hinders him the most and he is able to walk for approximately five minutes and a distance of 100 feet before he has to stop and rest (Tr. 157-158). Plaintiff testified he is only able to lift items which are less than twenty pounds, and he is unable lift anything past chest-height without pain (Tr. 158-159). Plaintiff testified he is able to use a computer and keyboard without any pain (Tr. 159). Plaintiff has to elevate his leg at least twice a day for 15 to 20 minutes while laying down (Tr. 160). Plaintiff also lays down at least four times a day for an hour, or so, to straighten out his back while he watches a show, and uses ice at least twice a day (Tr. 160).

The vocational expert, Terri Crawford, testified Plaintiff is not able to perform any of his past work; however, he is able to work as an order food clerk and a charge account clerk, both of which are sedentary, unskilled positions (Tr. 163-166).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform sedentary work (Tr. 46). The ALJ found Plaintiff is unable to perform any past relevant work[8] (Tr. 45). The ALJ also found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including an order clerk for food and beverage services, and a charge account clerk (Tr. 47). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 47).

Plaintiff appeals, arguing first, the decision of the ALJ failed to articulate a legally sufficient rational for his conclusions regarding Plaintiff's RFC, and second, the ALJ's questioning of the vocational expert was improper and therefore the vocational expert's answer is not substantial evidence supporting the ALJ's determination.

---

[8] Plaintiff's past relevant work includes work as a truck driver, apartment manager, building maintenance repairer, construction worker, and plumber (Tr. 45, 163-164).

4

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will

review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence, or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus,

an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

**IV. DISCUSSION**

In his appeal of the ALJ's decision, Plaintiff argues, first, the decision of the ALJ failed to articulate a legally sufficient rational for his conclusions regarding Plaintiff's Residual Functioning, and second, the ALJ's questioning of the vocational expert was improper and therefore the vocational expert's response is not substantial evidence supporting the ALJ's determinations.

**A. Residual Functioning Capacity**

In his decision, the ALJ found Plaintiff has the RFC to perform sedentary work except he can lift 20 pounds occasional, and 10 pounds frequently (Tr. 40). Plaintiff can stand and/or walk

7

for 15 minutes continuously, and for two hours cumulatively in an eight hour work day (Tr. 40). He can sit for 45 minutes at a time, and six to eight hours in total during a work day; however, he needs a positional change every 45 minutes when sitting and must have the ability to stand for three minutes without being off task (Tr. 40). Plaintiff can climb ramps, stairs, and stoop, kneel and crouch occasionally, but can never climb scaffolds or ladders, crawl, or reach overhead with his left arm (Tr. 40). Plaintiff can frequently reach in all other directions with his left arm (Tr. 40). He must avoid concentrated exposure to extreme cold and vibration, and should not work at unprotected heights, or around dangerous moving machinery (Tr. 40).

A claimant's RFC is what a he can do despite his or her limitations. *See* 20 C.F.R. § 404.1545. "Residual functional capacity is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting for eight hours a day, five days a week, or the equivalent work schedule." *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) *citing* Social Security Ruling 96–8p. When finding Plaintiff's RFC, the ALJ evaluates the record as a whole, including Plaintiff's own testimony regarding his symptoms and limitations, the Plaintiff's medical records, and any medical opinion evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). A Plaintiff's RFC is a medical question where "some" medical evidence must support the ALJ's RFC determination. *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). An ALJ "may not draw upon his own inferences from medical reports." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) *citing Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In the present case, Plaintiff's RFC was based on the ALJ's finding of severe impairments of morbid obesity, subacromial and subdeltoid bursitis, degenerative disc disease

with radiculopathy in the lumbar spine, and status/post medial meniscus tear, and the non-severe impairments of gastroesophageal reflux disease ("GERD"), and a history of Osgood-Schlatter's disease (Tr. 38-39). In addition to the impairments listed above, Plaintiff claimed an alleged disability as a result of a memory problem following a car accident, a bad back, bad knees, a shoulder injury, and obesity (Tr. 41). The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements of intensity, persistence, and limiting effects of these symptoms were not consistent with the evidence in the record (Tr. 41).

The ALJ properly considered Plaintiff's complaints of disabling pain using Plaintiff's own testimony, Plaintiff's medical records, and medical opinion evidence, therefore, the ALJ's conclusions about Plaintiff's RFC are supported by substantial evidence.

### i. Medical Opinions

Plaintiff contends the ALJ improperly discounted medical opinions from three of Plaintiff's medical sources, and as a result, the ALJ came to his own unsupported conclusions regarding the sufficiency of medical evidence to determine Plaintiff's RFC (ECF 15 at 8). Specifically, Plaintiff argues the ALJ failed to give any rationale about how he got from the medical opinions of three treating medical sources to his conclusions regarding Plaintiff's RFC.

Plaintiff points to *Lauer* to support the argument the ALJ improperly determined Plaintiff's RFC by failing to provide "some" medical evidence. In *Lauer*, the Eighth Circuit determined the ALJ failed to cite to "some" medical evidence in making his RFC determination. 245 F.3d 700, 704 (8th Cir. 2001). The ALJ rejected the treating physicians' opinions and instead relied solely upon the opinion of a prior treating physician in determining Plaintiff's RFC. *Id.* The prior treating physician was never asked to express an opinion about Plaintiff's

ability to participate in work-related activities, and therefore his opinions were not considered "some" medical evidence because it did not relate to the Plaintiff's ability to work. *Id. Lauer* does not apply in the present case.

Here, the ALJ did rely on "some" medical evidence in determining Plaintiff's RFC, namely because the ALJ considered the entire record, including medical records, Plaintiff's testimony, and medical opinions and then pointed specifically to the record when he made a determination about Plaintiff's ability to participate in work-related activities. The ALJ specifically details his justification for affording certain treating physicians' opinions particular weights.

First, the ALJ states the opinion of Dr. Bobby Enkvetchakul is given little weight because a "significant portion of the medical evidence was submitted subsequent to [the Doctor's] review" (Tr. 44). Dr. Enkvetchakul's December 2011 opinion found Plaintiff had no restrictions, and while his opinion was consistent with the medical documentation he had at the time, subsequent medical evidence supports some restrictions on Plaintiff's ability to work (Tr. 44). Second, the ALJ also gives little weight to Dr. John Demorlis's opinion because it was "rendered prior to the majority of the claimant's medical evidence" (Tr. 44). Like Dr. Enkvetchakul's opinion, Dr. Demorlis's opinion was consistent with the medical evidence available at the time of his review and states Plaintiff could work with limited standing (Tr. 44). However, his opinion is inconsistent with subsequent medical evidence which provides for higher restrictions on Plaintiff's ability to work (Tr. 44). Finally, the ALJ gives some weight to Plaintiff's primary care provider, Vivian Dudley, a family nurse practitioner, because she does not address Plaintiff's shoulder issues and any restrictions on reaching as a result of those injuries (Tr. 44). Additionally, Ms. Dudley is not an acceptable medical source under Social Security Ruling 06-

03p,[9] and her treatment relationship consisted of only four visits over the course of one year (Tr. 44).

The ALJ provided specific rational for discounting or accepting the medical opinions of all three treating medical sources and therefore substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC. Additionally, the ALJ provided rational for his RFC determination by stating Plaintiff's medical records support the determination Plaintiff could perform sedentary work, and while the ALJ discredited much of Plaintiff's subjective complaints of the severity of his physical impairments, Plaintiff's RFC reflects some of his impairments including his inability to lift certain weights, his need for rest after standing or walking, and his inability to reach overhead with his left arm (Tr. 40).

The ALJ's decision does not discount medical opinions to come to unsupported conclusions, and therefore provides "some" medical evidence and is supported by substantial evidence.

### ii. Subjective Complaints by Plaintiff

Plaintiff argues the ALJ incorrectly discounted Plaintiff's subjective complaints of disabling pain, and therefore substantial evidence does not support the ALJ's determination of Plaintiff's RFC.

The ALJ may discredit Plaintiff's subjective claims of disabling symptoms to the extent they are inconsistent with the record, "including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's

---

[9] Following the ALJ's decision in August 2016, Advance Practice Registered Nurses ("APRN") are now considered "acceptable sources of medical opinion evidence." Plaintiff does not argue this recognition of a new type of acceptable medical source applies retroactively, and therefore the Court will not address the amended standards. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, Social Security Administration, 80 Fed. Reg. 82, vol. 11, 5844 (Jan. 18, 2017).

11

self-imposed restrictions." *Hicks v. Colvin*, 2014 WL 651380 (E.D. Mo. 2014) *citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

When analyzing a claimant's subjective complaints of pain, the ALJ must consider the five factors from *Polaski* including first, the claimant's daily activities, second, the duration, frequency, and intensity of the pain, third, the precipitating and aggravating factors, fourth, dosage, effectiveness and side effects of medication, and fifth, any functional restrictions. *Hicks v. Colvin*, No. 4:12CV2357 HEA, 2014 WL 651380, at *4 (E.D. Mo. Feb. 19, 2014) *citing* 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. §§ 404.1529, 416.929. "The ALJ [is] not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir.2000). "Because the ALJ [is] in a better position to evaluate credibility, we defer to his credibility determinations as long as they [are] supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ properly addressed Plaintiff's improvement with treatment, his daily activities, and his non-compliance with treatment using Plaintiff's own testimony, Plaintiff's medical records, and medical opinion evidence to determine his subjective complaints of disabling pain, therefore, the ALJ's conclusions are supported by substantial evidence.

### a. Plaintiff's Improvement of Pain With Treatment

First, the ALJ considered the improvement of Plaintiff's pain with treatment. Plaintiff self-reported improvement in his knee pain with non-narcotic pain medication and anti-inflammatory drugs, and medical records indicate he walked with a normal gate without the prescription of assistive devices to help him get around (Tr. 42). Plaintiff's complaints of back pain improved with epidural steroid injections and with physical therapy (Tr. 42). After a six

12

month break from physical therapy, Plaintiff did not report any back pain when he returned to

physical therapy in April 205 (Tr. 42). As for Plaintiff's shoulder pain, Plaintiff reported

significant improvements in his symptoms with physical therapy and anti-inflammatory

medications (Tr. 42). The ALJ also considered Plaintiff's numerous medical records which

indicated Plaintiff had a normal stride without any evidence of a limp, an appropriate range of

motion in his spine, full strength in his lower extremities, and decreased shoulder pain as a result

of physical therapy (Tr. 42). Accordingly, the ALJ properly evaluated Plaintiff's improvement

with treatment in determining Plaintiff's subjective complaints of pain and affording them

credibility.

       **b. Plaintiff's Daily Activities**

The ALJ also considered Plaintiff's daily activities and the extent to which they are

inconsistent with his subjective claims of disabling pain (Tr. 43). Plaintiff claimed he is unable to

lift anything above his chest, however, the records indicate Plaintiff has done soldering work,

rewired a house, and spent a day running pipe over his head, even with these restrictions (Tr. 44).

Additionally, Plaintiff has reported back and shoulder pain since he was a teenager, but

continued to work in fields requiring a great deal of physical exertion, supporting the ALJ's

conclusion Plaintiff is not as impaired as he alleges (Tr. 44). The ALJ also gave some weight to a

third-party function report by Plaintiff's mother, Julie King, where she indicated Plaintiff helps

to care for his father, care for his pets, prepare his own meals, and does his own laundry (Tr. 45,

313-321). Testimony and medical records regarding Plaintiff's daily activities provide

substantial evidence to support the ALJ's conclusion regarding Plaintiff's RFC, and the ALJ's

determination Plaintiff's daily activities are evidence his pain is not as disabling as he alleges.

### c. Plaintiff's Non-Compliance

Plaintiff contends the ALJ failed to follow the required analysis to appropriately use Plaintiff's noncompliance with treatment to discount his subjective complaints of pain. First, the ALJ did not make a determination Plaintiff was noncompliant with treatment as a basis for deciding Plaintiff was not disabled. Rather, the ALJ listed Plaintiff's noncompliance with treatment as a factor in deciding some of Plaintiff's statements were not entirely credible.

It is appropriate for the ALJ to consider Plaintiff's inability to follow treatment recommendations when determining his credibility. *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). "We defer to the ALJ's evaluation of [a claimant's] credibility, provided such determination is 'supported by good reasons and substantial evidence, even if every factor is not discussed in depth.'" *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014).

Following a detailed explanation of each of Plaintiff's impairments and the medical records which support the impairments, the ALJ considered Plaintiff's noncompliance with recommended treatment as one consideration in determining the credibility of Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, and concluded Plaintiff's statements were not entirely credible (Tr. 43) This finding of noncompliance was not used by the ALJ to deny benefits under 20 C.F.R §§ 404.1530 and 416.930, but rather was used by the ALJ in assessing Plaintiff's credibility with regards to his subjective complaints of the alleged symptoms.

As evidence of Plaintiff's non-compliance, the ALJ noted Plaintiff canceled multiple physical therapy appoints without rescheduling them despite the improvements in his pain as a

14

result of the therapy (Tr. 43). Plaintiff also did not follow his home exercise program or use cold therapy as recommended (Tr. 44). Plaintiff was also consistently late to scheduled appointments (Tr. 44). Finally, the ALJ noted while Plaintiff testified he attends medical appointments multiple times each month, from May 2015 to August 2016, Plaintiff only attended two appointments for diagnostic imaging and one for physical therapy (Tr. 43). Accordingly, the ALJ appropriately listed Plaintiff's noncompliance with treatment as a factor in deciding some of Plaintiff's statements were not entirely credible.

In conclusion, the ALJ properly considered three medical opinions, Plaintiff's subjective complaints of pain, and his non-compliance with treatment using Plaintiff's own testimony, Plaintiff's medical records, and medical opinion evidence to determine Plaintiff's RFC, therefore, the ALJ's conclusions about Plaintiff's RFC are supported by substantial evidence.

    **B. Hypothetical Question**

Plaintiff argues the ALJ's determination Plaintiff was incapable of past relevant work and Plaintiff was able to make an adjustment to other work, was based on a flawed and improper hypothetical question to the vocational expert.

Plaintiff relies on *Singh* to support this contention. In *Singh*, the Eight Circuit determined the ALJ's questioning of a vocational expert was improper because the ALJ improperly rejected the opinions of Plaintiff's treating physician and subjective complaints of pain before questioning the vocational expert, therefore the hypothetical question did not adequately reflect the Plaintiff's impairments. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). *Singh* does not apply in the present case because this Court does not find the ALJ improperly determined Plaintiff's RFC either by failing to point to some medical evidence or by improperly determining Plaintiff's credibility.

During the hearing, the ALJ posed two hypothetical questions to the vocational expert. First, the ALJ asked the vocational expert:

> Q: Okay. Then for our first hypothetical, I'd like you to consider a hypothetical individual of the claimant's age, education, and past work experience with the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, to stand and/or walk for a cumulative total of two hours during an 8-hour workday and for 15 minutes continuously, and to sit for a cumulative total of six to eight hours during an eight-hour workday and for 45 minutes continuously. The hypothetical individual would need the opportunity to make a positional change every 45 minutes when performing seated work which would consist of the ability to stand briefly at the work station without being off task and would not need to exceed three minutes. The hypothetical individual could climb ramps and stairs occasionally but could never climb ladders and scaffolds. The individual could occasionally stoop, kneel, and crouch but could never crawl as part of work activity. The individual should not be asked to perform work that requires reaching overhead with the left upper extremity. Otherwise, the individual could reach, perform general reaching, and handling with the left upper extremity on a frequent, but not a constant basis. The hypothetical individual would not have restrictions in use of the right dominant upper extremity. The hypothetical individual would need to avoid or actually could not work in environments that would result in concentrated exposure to extreme cold or vibration. The individual could never work at unprotected heights or around dangerous moving machinery like forklifts. Could that hypothetical individual perform any of the claimant's past work?
>
> A: No, Your Honor.
>
> Q: Would there be any work such a hypothetical individual could perform?
>
> A: It would have to be sedentary, unskilled, Your Honor. (Tr. 164-165)

Plaintiff argues the hypothetical questions do not "capture the concrete consequences of [P]laintiff's impairments" but does not specifically state which concrete consequences were not posed by the ALJ, and therefore not addressed by the vocational expert (ECF 15 at 20). "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694–95 (8th Cir. 1996). The hypothetical question posed by the ALJ was based on a proper determination Plaintiff had certain impairments and those impairments would subsequently affect his ability to perform past work. The ALJ's hypothetical questions appropriately mirrored

16

the ALJ's RFC findings and specifically laid out restrictions and consequences expected as a result of Plaintiff's impairments. Accordingly, substantial evidence supports the ALJ's RFC finding and there was no error in the ALJ's hypothetical questions posed to the vocational expert or the expert's response to those questions.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decisions Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 12th day of March, 2019.

*E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**